# Richmond

## The Pennsylvania Railroad Company v. Commonwealth of Virginia ex rel State Corporation Commission, et al.

January 25, 1954.

Record No. 4153.

Present, All the Justices.

The opinion states the case.

*Mears & Mears,* for the appellant.

*J. Lindsay Almond, Jr., Attorney General, William C. Seibert, Ernest Ruediger, J. Brooks Mapp, R. Norman Mason* and *A. Swilling,* for the appellees.

EGGLESTON, J., delivered the opinion of the court.

In September, 1952 the Pennsylvania Railroad Company filed a petition with the State Corporation Commission seeking authority to discontinue its agency service and abandon its stations at Weirwood, Belle Haven, Keller, Melfa and Mears, in Virginia, and to maintain these locations only for carload freight shipments. The petition alleged that the receipts derived from these agencies do not justify, nor do the public convenience and necessity require, their continued maintenance. Patrons of the stations at Keller, Melfa and Mears, by counsel, appeared and objected to the proposed discontinuance and abandonment.

The Commission heard the evidence offered by the Railroad Company and by agreement of counsel considered, in connection therewith, the entire record in the proceeding which the Railroad Company had instituted in 1949, seeking authority to discontinue agency service at fourteen of its stations on the same line. In that proceeding authority was granted to discontinue certain of the agencies, but denied as to others, including Weirwood, Keller, Melfa and Mears. The discontinuance of the agency at Belle Haven was not then involved.

Upon consideration of the record thus presented in the present proceeding the Commission entered an order denying the prayer of the petition, and from that order the Railroad Company has taken this appeal of right. Code, § 12-63.

The five stations involved in this proceeding are on the main line of the Delmarva Division of the Railroad Company which extends from Wilmington, Delaware to Cape Charles, Virginia. Along the 59.2 miles of this line in Virginia are

twenty agency stations including Weirwood in Northampton county, and Belle Haven, Keller, Melfa and Mears in Accomack county.

The Railroad Company operates along this line daily two northbound and two southbound passenger trains, none of which stops at Weirwood, Belle Haven, Melfa, or Mears. Keller is a conditional stop for these trains. If service at Keller is abandoned it is proposed that a conditional stop be made at Painter which is 2.5 miles to the south.

Should the discontinunce of the five stations be authorized the Railroad Company proposes to handle carload shipments to and from each of these points through the nearest retained agency station. Less than carload freight shipments would be handled by the daily "pickup and delivery" service now in operation along the line.

The evidence on behalf of the Railroad Company shows that this line runs through a highly cultivated agricultural section, with principal towns lying along the railroad. The development and prosperity of the section have been attributable principally to its potato crop, from the transportation of which the Railroad Company has in the past derived the major portion of its freight receipts. Witnesses on behalf of the Railroad Company testified that in recent years, because of the truck competition, its receipts from this source have so sharply declined that it is now "economically unsound" and destructive of the "efficiency of railroad operation" to require the maintenance of each of these stations. Without inconvenience to the public, these witnesses testified, the business of the Railroad Company with its patrons may be transacted at the stations to be retained along this line which will be of the average distance of 3.3 miles apart.

Witnesses for the Railroad Company likewise testified that the following were the revenues from and costs of operating the five agencies for the first ten months of 1952:

|            | Revenue      | Costs      |
|------------|--------------|------------|
| Weirwood   | $13,678.00   | $ 867.30   |
| Belle Haven| 52,494.00    | 3,380.49   |
| Keller     | 28,285.00    | 3,400.60   |
| Melfa      | 28,402.00    | 3,323.57   |
| Mears      | 19,745.00    | 838.33     |

Such revenues do not include the receipts from telegrams or the transportation of express and mail. The items of costs listed for the respective stations include agents' salaries, fuel, electricity and telephone, but not the expense of repairing the station buildings.

While in each instance the amount of the revenue at the station far exceeded the amount expended for costs, witnesses for the Railroad Company testified that its operating department had adopted a "rule of thumb" which required the discontinuance of any agency where its "out-of-pocket costs" exceeded five per cent of its gross revenue. By the application of this formula, it was said, it had been determined that the entire Delmarva Division had been operated at a loss for the same period.

Other than this, the Railroad Company offered no evidence to show that any of these stations was being operated at a loss.

We agree with the Commission that this "rule of thumb" invoked by witnesses for the Railroad Company does not justify the discontinuance of these stations. As the Commission aptly pointed out in its opinion, the application of such a rule would permit every railroad company in the State to select only its more profitable stations for retention and discard the less profitable ones, regardless of the present or future needs of a community. It fails to take into consideration the important factors of public convenience and necessity which must be considered in determining whether the agency service at these stations should be retained or discontinued.

■ Although the objectors, the patrons of the several stations, offered no witnesses in the present proceeding, a number had testified before the Commission at the 1949 proceeding, and, as has been said, by agreement of counsel such testimony has been made a part of the present record, was considered by the Commission, and is before us on this appeal. There is ample evidence in the testimony taken at the 1949 proceeding to support the finding of the Commission that the discontinuance of the services at these stations will not be in the public interest. Numerous citizens of the several communities, including shippers, farmers, merchants and members of the boards of supervisors, testified as to the great inconvenience to the patrons which would result from the abandonment of each of the stations, except Belle Haven which was not then involved.

After the members of the Commission had visited the territory and made a personal inspection of the line, it thus summarized its findings in its order entered in the 1949 proceeding:

"The Pennsylvania Railroad operates in Accomack and Northampton Counties through an area which is well settled along almost the whole line of railroad and has had established for many years railroad stations which are closer together than is common in other sections of the state. Around the stations settlements have grown in varying population and in many cases the station is the core of the community. While the distance between communities is not great, the interest of each community appears to be centered in itself.

"The interests of the various communities cannot be considered lightly. The gross revenues from the stations are greater than the expenses at the stations and the Commission has considered the needs of the public as well as the pleas of the petitioner."

In its opinion in the present proceeding the Commission observed that the quoted language "is just as applicable in this case as it was in the previous case."

As an additional reason why the agencies at Weirwood and Belle Haven should be discontinued, the Railroad Company argues that no formal objection has been made by or on behalf of the patrons of either of these stations. A ready answer to this argument is found in section 156-b of the Constitution which charges the Commission with the power and duty of requiring transportation companies doing business in this State "to establish and maintain all such public service facilities and conveniences as may be reasonable and just, * * * ." Such power and duty are not conditioned upon the objection or lack of objection on the part of the public.

It is true that the discontinuance of the Belle Haven station was not involved or passed upon in the 1949 proceeding, but as the Commission states in its opinion in the present case, during the pendency of that proceeding the members "visited every station on the Eastern Shore for the purpose of seeing * * * which ones were needed by the public," and relying upon such inspection as well as the testimony presented, decided that the abandonment of none of these agencies was justified at the present time. We think there is ample evidence in the record to support that finding.

The case is readily distinguishable from that of *Atlantic Coast Line R. Co.* v. *Commonwealth*, 191 Va. 241, 61 S. E. (2d) 5, relied upon by the Railroad Company. That case involved the discontinuance of a single station, patronized mainly by a single shipper, where the receipts for a number of years were less than the necessary costs of maintenance of the agency. There we held that the agency should be discontinued.

In the present case the receipts at each of the stations greatly exceed the cost of maintenance. Here, too, a large number of shippers are concerned.

The order appealed from is

*Affirmed.*